**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Donna Parris | : | |
| | : | |
| Plaintiff | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| Charles Pappas, Robin Delaney, | : | |
| Anna Alexis, LLC and Normandies Park, | : | |
| LLC | : | |
| | : | |
| Defendants | : | July 20, 2010 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

**I.  Introduction**

Donna Parris ("Plaintiff") filed a Complaint on July 20, 2010 alleging, inter alia, violations of the Fair Housing Amendments Act of 1988 based on the refusal to make a reasonable accommodation of her disability by Charles Pappas, Robin Delaney, Anna Alexis, LLC and Normandies Park, LLC (collectively, "Defendants").  Plaintiff owns a mobile manufactured home, which is located on a rented parcel of land known as Lot # 6 at Normandies Park in Dayville, Connecticut (the "Premises" and "Normandies Park", respectively). Defendants own and/or manage Normandies Park.

Plaintiff requires a 24-hour live-in aide to manage her federally recognized disabilities. Her physician requested this reasonable accommodation in writing.  Defendants denied this request and now seek to evict Plaintiff on the grounds that her live-in aid is an "unauthorized tenant."  Defendants have also used the reasonable accommodation request as a bargaining chip

1

in an attempt to coerce Plaintiff into agreeing to pay for the remediation of on-going septic issues, which are the sole responsibility of Defendants.

Plaintiff moves this Court for a preliminary injunction prohibiting Defendants from evicting her or threatening to evict or otherwise preventing her live-in aid from continuing to care for her pending resolution of all claims in the above-titled action.

## II. Factual Background

### A. Plaintiff's Disabilities

The Social Security Administration has deemed Plaintiff disabled as a result of her diabetes mellitus, retinopathy, generalized sensory-motor polyneuropathy, bilateral ulnar neuropathy and orthostatic hypotension ("Plaintiff's disabilities"). Plaintiff's Affidavit dated July 20, 2010, ¶¶ 5-6. Plaintiff's disabilities cause frequent drops in blood pressure that lead to losing consciousness, eye problems and significant nerve damage in her extremities. Pl. Aff., ¶ 7. Due to the numbness and weakness in her hands, Plaintiff is limited in the major life activity of caring for herself and performing everyday tasks. Pl. Aff., ¶ 8. She also has sensation issues in her extremities, which have led to severe burns and bruising without her knowledge. Among other things, Plaintiff needs help dressing, taking daily insulin shots and recovering when she loses consciousness or otherwise injures herself. Pl. Aff., ¶¶ 9-10.

### B. Plaintiff's 24-Hour Live-in Aid

As a result of Plaintiff's degenerative disabilities, Mr. John Dembowski ("Mr. Dembowski") moved into the home to provide 24-hour live-in care on or around February 2009. Pl. Aff., ¶ 12. Mr. Dembowski injects Plaintiff with insulin several times daily, assists with tasks requiring fine motor skills, helps when she passes out and prevents Plaintiff from injuring herself because she has a lack of sensation in her extremities. Pl. Aff., ¶ 13. Defendants have been

2

aware that Mr. Dembowski moved in with Plaintiff since February 2009. Pl. Aff., ¶ 14. Defendants accepted and negotiated monthly rent checks for the Premises from Mr. Dembowski each month from February 2009 through October 2009. Pl. Aff., ¶ 15. In other words, Mr. Dembowski paid the rent for the Premises and Defendants knowingly accepted it for at least six months, thereby creating actual and constructive knowledge of his tenancy. Also, Robin Delaney, the manager of Normandies Park, verbally confirmed to Plaintiff that she knew Mr. Dembowski moved into the Premises during February 2009.

## C. The Septic Issues

The septic system on the Premises has required remediation or other servicing at least six times in the last year. The problems are on-going and disgusting: sewage back up into the home, rising sewage underneath the home and in the yard, unbearable stench in and around the home and destruction of property underneath the home. Pl. Aff., ¶¶ 16-20. The existing lease agreement, dated July 1, 2008, requires Defendants to maintain and service the septic system. Pl. Aff., ¶¶ 22-23.[1]

The septic system required servicing in March 2009, July 2009, twice in October 2009, once in November 2009, once more during the 2009-2010 Winter and again on March 18, 2009. Pl. Aff., ¶¶ 24-29, 32-33, 36-46 and 47. Defendants have pressured Plaintiff to assume their responsibilities regarding the septic tank through a variety of threats and scare tactics which

---

[1] Moreover, the Connecticut General Statutes require that landlords, including mobile home park landlords, maintain septic systems for their tenants. See Conn. Gen. Stat. § 21-82(a)(11) ("the owner shall maintain water and sewage lines and connections in good working order, and in the event of any emergency, make necessary arrangements for the provision of such service on a temporary basis"); see also Conn. Gen. Stat. § 47a-7(a)(4) ("[a] landlord shall maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and other facilities"); Balint v. Casale, 40 Conn. App. 595, 597-98 (1996) (affirming trial court's determination that landlord of a mobile home park violated § 47a-7 by failing to adequately maintain septic tanks of tenants).

have, inter alia, denied her reasonable accommodation and caused other harm.  Pl. Aff., ¶¶ 30-31, 34, 35, 37-45, 48-51.

### D.  Defendant's Attempts to Use Plaintiff's Reasonable Accommodation Request As Leverage To Alter The Existing Lease Agreement

First, following the March and July 2009 septic issues, Defendants attempted to shift the burden of maintaining the water and septic system from Anna Alexis, LLC to Plaintiff, by sending her a proposed new lease agreement that required tenants to repair and maintain the septic system.  Plaintiff refused to sign this document.  Pl. Aff., ¶ 30-31.     Subsequently, Defendants' attorney stated to Plaintiff (who was not represented by counsel at the time) that because she received the proposed new lease by certified mail, she was bound by its terms -- even if she never signed the proposed new lease.  Pl. Aff., ¶ 42.

Second, following the October 2009 and November 2009 septic issues, Defendants ' threatened to evict Plaintiff.  The septic system overflowed or otherwise required service twice in October 2009 and again on November 1, 2009.  Pl. Aff., ¶¶ 32-36.  Plaintiff reported the problems to the Town of Killingly, who contacted the Northeast Division of the Department of Health on her behalf.  Pl. Aff., ¶ 34.  The Department of Health visited the Premises on October 26, 2009 and again on November 1, 2009.  Pl. Aff., ¶ 35-36.

Defendants immediately retaliated against Plaintiff for reporting the septic problems to the Department of Health.  By a letter dated November 2, 2009, Defendants threatened to evict Plaintiff.  Pl. Aff., ¶ 39.  The November 2, 2009 Letter stated Plaintiff was in violation of her lease for two reasons: (i) Mr. Dembowski was an "unauthorized tenant" and (ii) there was an "unauthorized shed" on the property.  Pl. Aff., ¶ 40.[2]  In response to the November 2, 2009

---

[2] Plaintiff's shed was authorized by Defendant Robin Delaney and comports with the size and material requirements set forth in the Lease Agreement.  Pl. Aff., ¶ 41.   The shed is not unauthorized or improper.

Letter, Plaintiff telephoned Defendants' attorney and explained that Mr. Dembowski provided 24-hour live-in care and requested any forms necessary to document the live-in aide's lawful tenancy as a reasonable accommodation for her disability. Pl. Aff., ¶ 41. No forms were ever provided. On December 9, 2009, Plaintiff submitted a letter to Defendants from her doctor, Carol Levitt, M.D., which read as follows:

> **Due to the unstable nature of Donna Parris' medical condition, she requires a 24 hour live in companion. It is unsafe for her to be living alone, and it would be against my best medical advice for her to live alone.**
>
> **Please call me if you have any questions or concerns at (860) 774-7501.**

Letter from Carol Levitt, dated December 9, 2009, attached to Pl. Aff., ¶ 43 (bold added). After sending the letter, Plaintiff contacted the Defendants' attorney. He acknowledged they received the doctor's letter and that this could all be "swept under the rug." Pl. Aff., ¶ 43. Defendants have never requested additional information or clarification. Pl. Aff., ¶ 44. Plaintiff did not hear from Defendants for several months. Pl. Aff., ¶ 45.

Third, despite the letter from Plaintiff's doctor, Defendants began eviction proceedings against Plaintiff for having a 24-hour live-in aid. Pl. Aff., ¶ 50. On March 18, 2010, Plaintiff again contacted the Town of Killingly about the septic issues. Pl. Aff., ¶ 47. On March 23, 2010 -- just five days after Plaintiff last contacted the Town – Defendants attorney contacted Plaintiff and issued an ultimatum: if Plaintiff agreed to pay the $300 every time the septic tank required servicing, she would be allowed to have a 24-hour live-in aide; if she did not agree, she would be evicted. Pl. Aff., ¶ 48. Defendants' attorney further stated that Defendants did not believe that her need for a reasonable accommodation was genuine. Pl. Aff., ¶ 49. Despite this assertion, Defendants have never requested additional documentation or accepted Plaintiff's doctor's

invitation to discuss the reasonable accommodation.  Instead, they issued an ultimatum, which

Plaintiff did not accept.  Pl. Aff., ¶ 49.   The following day, Defendants served Plaintiff with a

Notice to Quit, alleging she had an unauthorized tenant and an unauthorized shed on the

property.  Pl. Aff., ¶ 50.  Defendants have also filed and served a Summary Process Complaint,

dated June 17, 2010.  Pl. Aff., ¶ 50.

## II.     ARGUMENT

### A.     Preliminary Injunction Standard

To be entitled to a preliminary injunction, a party "must demonstrate (1) that it will be

irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on

the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair

ground for litigation, and a balance of hardships tipping decidedly in its favor."  Forest City Daly

House. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir. 1999).  The Second Circuit has

"found support for the proposition that where a plaintiff demonstrates a likelihood of success on

the merits of a fair housing claim irreparable harm may be presumed."  Laflamme v. New

Horizons, Inc., 514 F.2d 250, 254 (D.Conn. 2007) (internal quotations omitted, citing Forest

City, 175 F.3d at 153.).[3]

In this matter, Plaintiff can show a likelihood of success on the merits of her fair housing

claim as well as establish irreparable harm and a balance of hardships in her favor.  Accordingly,

she meets the threshold for preliminary injunctive relief under either standard.

### B.     Plaintiff Has a Likelihood of Success on the Merits of Her FHA Claim

---

[3] Where, as in this case, the moving party seeks a prohibitory injunction, as opposed to a mandatory injunction, the Court shall not apply the heightened burden of showing a "substantial likelihood of success."  See Louis Vuitton Malletier v. Dooney & Bourke, Inc, 454 F.3d 108, 114 (2d Cir. 2006) (vacating and remanding after finding that the District Court incorrectly applied the heightened mandatory injunction standard to a motion for a prohibitory injunction).

The Fair Housing Act prohibits discrimination on the basis of disability.  See 42 U.S.C. § 3604(f).  This includes the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  The reasonable accommodation provision of the FHA "requires that changes be made to such traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling."  Tsombonidis v. W. Haven Fire Dept., 352 F.3d 565, 578 (2d Cir. 2003) (quoting H.R. Rep. No. 100-711, at 25 (1988) reprinted in 1988 U.S.C.C.A.N. 2173, 2186.)

To establish a violation of the FHA for failure to make a reasonable accommodation, a plaintiff must show "(1) she suffers from a handicap as defined by the FHA; (2) Defendants knew or reasonably should have known of Plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford Plaintiff an equal opportunity to use and enjoy the dwelling; and (4) Defendants refused to make such accommodation." Bentley v. Peace & Quiet Realty 2 LLC, 367 F.Supp.2d 341 (E.D.N.Y.2005) (citing United States v. California Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir.1997)).  Plaintiff can establish all four of these requirements.

### B.1    Plaintiff Is A Person With A Disability As Defined By The FHA

For purposes of the FHA a disability is "a physical or mental impairment which substantially limits one or more major life activities."  24 C.F.R. §100.201.  A physical impairment includes a physiological disorder or condition affecting the neurological, musculoskeletal, digestive, hemic, lymphatic or endocrine systems, and also includes diabetes. Id.  Diabetes is a physical impairment because it affects the digestive, hemic and endocrine systems.  Rohr v. Salt River Project Agric. Imp. and Power Dist., 555 F. 3d 850, 858 (9th Cir.

7

2009) (quoting <u>Fraser v. Goodale,</u> 342 F.3d 1032, 1038–40 (9th Cir. 2003); <u>see also</u> <u>Gilles v. Astrue,</u> 2009 WL 1161500 at *2 (W.D.N.Y April 29, 2009) (holding plaintiff with diabetes, among other ailments, qualified as disabled).   Major life activities include caring for oneself, performing manual tasks, walking, seeing, and breathing. 24 C.F.R. § 100.201.

Plaintiff has been diagnosed with diabetes mellitus, retinopathy with bilateral macular edema, generalized sensory-motor polyneuropathy, bilateral ulnar neuropathy and orthostatic hypotension.  These disabilities trigger frequent, dramatic drops in Plaintiff's blood pressure, causing her to lose or almost lose consciousness.  Plaintiff's diabetes has also caused complications with her eyes and significant nerve damage in her arms and legs.  She is limited in her ability to walk, dress herself, perform household tasks, give herself insulin shots and care for herself when she loses consciousness.  Accordingly, Plaintiff is a person with a disability for purposes of the FHA.

### B.2.    Defendants Knew About Plaintiff's Disability

As more fully set forth above, on December 9, 2009, Plaintiff sent Defendants a letter from her doctor stating she required 24-hour in-home care.   Defendants have received the doctor's note clearly explaining Plaintiff's need for a live-in aide and have also discussed the doctor's note with Plaintiff herself.  "If a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue." <u>Janikowski Lee & Assocs. V. Cisneros,</u> 91 F.3d 891, 895 (7th Cir. 1996).  Defendants have never requested additional information or clarification from Plaintiff or her Doctor.  Instead, they issued an ultimatum and proceeded with eviction.

### B.3.    Plaintiff's Request Is Reasonable And Necessary

8

Live-in aides providing 24-hour care have specifically been considered a reasonable accommodation in other housing matters. See 24. C.F.R. § 982.316 (stating reasonable accommodations in Section 8 housing include live-in aides). Plaintiff's live-in aide assists her with her diabetes medications, everyday tasks and prevents injury when she loses consciousness or lacks sensation. Plaintiff's request for a live-in aide is reasonable and necessary because it lessens the limitations on her ability to care for herself resulting from her disability. Moreover, Plaintiff's doctor believes it is dangerous for her to live without in-home care.

B.4.    Defendants Denied Plaintiff's Request For A Reasonable Accommodation

Defendants denied Plaintiff's request for a reasonable accommodation several times. Defendants threatened to evict her live-in aid by re-casting him as an "unauthorized tenant" despite receiving a doctor's letter confirming the need for a live-in aid. Defendants also issued an ultimatum refusing to allow a live-in aide unless Plaintiff paid $300 each time the septic system needed to be pumped out. Defendants have now served a notice to quit and filed a summary process complaint stating unauthorized tenancy as grounds for eviction.

C.    **Plaintiff Will Suffer Irreparable Harm in the Absence of the Injunction**

Irreparable harm can be presumed from the violation of the Fair Housing Act. Laflamme, 514 F.2d at 254. Moreover, the facts here establish such irreparable harm. Risk of injury, infection, and humiliation all constitute irreparable harm. See Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 331 (2d Cir. 2005) (continued risk of injury and humiliation constitute irreparable harm). She will be unable to administer her insulin shots needed to control her diabetes, which could cause further complications or deterioration. She will be unable to manage simple, everyday tasks such as dressing. She will be alone when she loses consciousness and could

suffer severe harm from a fall or other injury.  Because of her disability, the denial of a live-in aide subjects Plaintiff to physical pain and suffering, severe emotional distress and risk of injury.

### D.  **Defendants Will Suffer No Harm**

While Plaintiff faces physical and emotional injury in the absence of the injunction, Defendants would suffer no harm as a result of its entry -- Plaintiff continues to pay her rent each and every month.   Also, Mr. Dembowski has already lived at the Premises for 16 months, paid rent and conducted himself appropriately.   There can be no harm to Defendants if Mr. Dembowski continues to live at the Premises and the eviction proceeding is enjoined from moving forward.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a preliminary injunction (1) allowing Mr. Dembowski to continue residing at the Premises; and (2) prohibiting Defendants from evicting or threatening to evict Plaintiff until resolution of the claims set forth in this case.

Respectfully Submitted,

By Counsel:

Timothy Bennett-Smyth
The Connecticut Fair Housing Center
221 Main Street, 4th Floor
Hartford, CT 06106
Tel: (860)263-0728
Fax: (860)247-4236
Juris No.: 27615

10

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on July 20, 2010 a copy of the foregoing was filed and served electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


By:_____/s/_____

          Timothy Bennett-Smyth