UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA PARRIS | : | |
| v. | : | CIV. NO. 10-CV-01128 (WWE) |
| CHARLES PAPPAS ET AL. | : | October 28, 2016 |

### DEFENDANT'S OBJECTION TO MOTION FOR ORDER OF CONTEMPT

The defendant, Mr. Charles Pappas, submits the following objection Plaintiff's motion for contempt (DE #274). As discussed below, Mr. Pappas continues to comply as he is able with the terms of the Court's Order of January 19, 2016, and he has turned over to Plaintiff all of the extremely meagre net profits from the Normandies Park mobile home. Mr. Pappas has also timely responded to Plaintiff's interrogatories and requests for production. As Mr. Pappas' various disclosures consistently show, he simply does not have the means to satisfy the judgment from his income. The judgment nevertheless has been partially satisfied by disbursement of settlement funds due to Mr. Pappas and his codefendant, and Mr. Pappas has arranged for the sale of all of his remaining property with the proceeds to be provided entirely to Ms. Parris. Under these circumstances an order of contempt would be inappropriate. The Court should instead establish a payment schedule that takes into account Mr. Pappas' extremely limited assets and monthly income.

### MR. PAPPAS' FINANCIAL CIRCUMSTANCES

Since May of this year, Mr. Pappas has, pursuant to the Court's Order of January 19, 2106, provided accountings of the income and expenses for the Normandies Park mobile home park. As these accountings show, in May, June, and July the park turned a

slight net profit (less than $300 total), all of which was provided to Ms. Parris. In other months nothing remained after expenses were paid—or, to be accurate, paid to the extent possible. The park's lack of profitability can be attributed to the at-best spotty rent payment pattern of its tenants, with a rotating cast of two out of six tenants paying in a typical month. Indeed, the park's most consistent tenant in terms of payment is perhaps Ms. Parris, who has for years occupied a unit without ever paying rent (though with good reason).

As outlined in Mr. Pappas' response to Plaintiff's interrogatories, Mr. Pappas' principal income in recent years has come from the rent obtained from Normandies Park and two properties adjacent to the park. Due to expenses and tenants' increasing failure to pay rent at the park, Mr. Pappas' actual ability to derive income from the park is essentially non-existent. He has obtained rent somewhat more consistently from the tenants of the adjacent properties, though neither tenant has paid rent this month.

The sum of total rental income over the past five years is, as Plaintiff calculates, approximately $100,000. Plaintiff presents this figure as impressive. It is not. That figure, which breaks down to $20,000 per year, does not account for the significant expenses of operating the properties. Based on recent expenses, operating the park alone costs approximately $10,000 per year, excluding taxes. The actual rental income from the properties, moreover, has been diminishing. In short, Mr. Pappas' actual income from these properties, particularly of late, can be measured in hundreds, not thousands, of dollars per month.

This minimal income is, moreover, Mr. Pappas' primary source of support for himself. As disclosed to Plaintiff, he has supplemented his income by renting out his

residence on an occasional basis, and he performs odd jobs like working as a handyman, cutting and packing wood, and giving advice to builders. These activities do not generate substantial or consistent income. As a bottom line, Mr. Pappas lives close to rock bottom, sometimes relying on meals from a food pantry to eat.

While Mr. Pappas is simply incapable of paying the judgment in this case from his own income, that does not mean that Ms. Parris is not receiving money to satisfy the judgment. Counsel for Plaintiff has estimated that approximately $205,000 has been recently paid to Ms. Parris from the trustee managing Defendants' malpractice settlement award. Mr. Pappas, for his part, has been actively marketing the properties he owns, and he has identified a buyer willing to pay $100,000.[1] While the tax liability on the properties is substantial, all remaining proceeds that would be profit to Mr. Pappas will go to Ms. Parris if the sale is completed.

## LEGAL STANDARD

"The hallmark of civil contempt is that the sanction imposed is only contingent and coercive." *Int'l Bus. Machines Corp. v. United States*, 493 F.2d 112, 115 (2d Cir. 1973). The coercive sanction of civil contempt, moreover, "has a remedial purpose—compelling obedience to an order of the court for the purpose of enforcing the other party's rights, or obtaining other relief for the opposing party." *Id*. In imposing a civil contempt sanction, the "court must exercise (t)he least possible power adequate to the end proposed." *Shillitani v. United States*, 384 U.S. 364, 371 (1966).

A civil contempt order should not issue "when it appears that there is at that time no wilful disobedience but only an incapacity to comply." *Maggio v. Zeitz*, 333 U.S. 56,

---

[1] Plaintiff presently objects to the sale of the property at this price.

3

72-73 (1948)(collecting cases); *accord Armstrong v. Guccione*, 470 F.3d 89, 101 (2d Cir. 2006). As the Court in *Maggio* explained, "to jail one for a contempt for omitting an act he is powerless to perform would reverse this principle [that civil contempt is coercive] and make the proceeding purely punitive, to describe it charitably. At the same time, it would add nothing to the [other party]." *Id.* At 72. *See also Soobzokov v. CBS, Quadrangle/New York Times Book Co.*, 642 F.2d 28, 31 (2d Cir. 1981) ("When it becomes obvious that sanctions are not going to compel compliance, they lose their remedial characteristics and take on more of the nature of punishment").

## A CONTEMPT SANCTION WOULD BE INAPPROPRIATE

Through his ongoing accountings to the Court, payments of any surplus rent at Normandies Park to Plaintiff, responses to Plaintiff's interrogatories and requests for production, and cooperation in attempting to sell his property to satisfy the judgment, Mr. Pappas has been in full compliance with the requirements of the Court's January 19, 2016, order, excepting only that he has not paid Plaintiff $47,844.28. As discussed above, this is money Mr. Pappas simply does not have.

Mr. Pappas also has not paid to Plaintiff all rents related to the properties adjacent to Normandies Park. A requirement that Mr. Pappas do so appears to have been contemplated by the Court's Order of March 23, 2012. Payment of the proceeds of the adjacent properties is not, however, contemplated in the Court's more recent Order of January 19, 2016. (Both orders were drafted by Plaintiff.) As discussed above, rent payments from the adjacent properties have been instrumental in providing Mr. Pappas with even a subsistence-level income. In selling Normandies Park and the adjacent properties, Mr. Pappas consequently will deprive himself of his primary source of

4

income. He has nonetheless made serious efforts to sell the properties and indeed has located a buyer. As discussed above, all of the profits of this sale will go to Ms. Parris.

Following the sale of Normandies Park and the adjacent property, it appears that the initial judgment of $262,407 in favor of Ms. Parris will be at least very nearly satisfied, leaving only attorneys' fees and penalties as the principal remaining balance. Looking forward, Mr. Pappas intends to continue to comply with his obligations and to pay the judgment to the extent of his financial capability. Loss of income from Normandies Park and the adjacent properties, however, will of course further depress his already meagre income, and it is hardly clear what Mr. Pappas' realistic ability to pay will be in the future. Plaintiff offers no basis for believing that Mr. Pappas has income or assets beyond those disclosed, and Plaintiff's unsubstantiated hope that incarceration will somehow squeeze blood from a stone is no basis for this Court to deprive Mr. Pappas of his fundamental liberty interest.

A more appropriate resolution, and one that would provide a clear roadmap for compliance, is as follows. Defendant proposes that the Court set a payment scheduelMr. Pappas be responsible for paying to Plaintiff 10% of all of his income above the federal poverty line ($11,770 per year) and 25% of all of his income above 150% of the federal poverty line ($17,655 per year). Defendant would provide such payment on a monthly basis, along with an accounting of his income for the month. The effect of the judgment on sale of any valuable assets owned by Mr. Pappas, including any assets acquired in the future, would not be subject to this schedule.

## CONCLUSION

For the reasons above, Defendant respectfully submits that the Court should not hold Mr. Pappas in contempt and should set a payment schedule for satisfaction of the judgment.

                                        Respectfully submitted,

                                        THE DEFENDANT,
                                        Charles Pappas

                                        OFFICE OF THE FEDERAL DEFENDER

Dated: October 28, 2016        /s/ James P. Maguire
                                        James P. Maguire
                                        Assistant Federal Defender
                                        265 Church Street, Suite 702
                                        New Haven, CT 06510
                                        Phone: (203) 498-4200
                                        Bar No.: ct29355
                                        Email: James_Maguire@fd.org

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on October 28, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                        /s/ James P. Maguire
                                        James P. Maguire