**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
                                    :
DONNA PARRIS                        :
                                    :
v.                                  :  Civil No. 3:10CV1128 (WWE)
                                    :
CHARLES PAPPAS, ET AL               :
                                    :
                                    :
```

RULING ON PLAINTIFF'S RENEWED MOTION FOR SANCTIONS AND
FINDING OF CONTEMPT [DOC. #274]

In this civil rights action pursuant to the Fair Housing
Amendments Act, Connecticut Discriminatory Practices Act, and
Connecticut Unfair Trade Practices Act, plaintiff Donna Parris
obtained a default judgment against defendants Charles Pappas,
Robin Delaney, Anna Lexis, LLC and Normandies Park, LLC, in the
amount of $112,407 in compensatory damages, $150,000 in punitive
damages and $87,392.50 in attorney's fees on February 10, 2012.
[Doc. ##112, 113, 121]. Since that time, plaintiff has expended
great effort and resources to collect on this judgment.

The Court assumes familiarity with the factual background
of this case as reflected in prior rulings. The following
additional facts describe a protracted procedural history caused
by defendant Pappas's noncompliance with the Court's orders.

Order Dated January 19, 2016 [Doc. #248]

On January 19, 2016, the Judge Eginton granted plaintiff's
Motion for Sanctions in part, and ordered Pappas to tender to

1

plaintiff, by February 19, 2016, "the amount of $47,844.28 representing the proceeds from the sale of a certain property located at 44-48 Barbara Street, Providence, RI 02908 that was sold by Defendant Pappas in violation of this Court's orders prohibiting dissipation of assets." [Doc. #248 ¶1]. The Court further ordered Pappas "to provide a monthly accounting of rents for the Normandies Park mobile home park to Plaintiff's counsel and the Court and to turn over any rents in excess of the cost to operate said park to Plaintiff on the 15th of each month commencing on February 15, 2015." Id. ¶2. Pappas was "further ordered to provide a full financial disclosure to plaintiff on or before February 1, 2016." Id. ¶3. This included the disclosure of all properties "in which he held an interest from January 1, 2013 to the present, any financial transactions to which he has been party during that time and all other information ordered to be disclosed in this Court's order dated August 6, 2012 (Doc. No. 196." Id. Finally, Pappas was "ordered to provide forthwith an address at which he [would] accept service of court documents." Id. ¶4.

Recommended Ruling Dated February 26, 2016

On February 26, 2016, the Court held Pappas in contempt on

> [t]he record of Pappas's extensive history of
> concealment and evasion, his most recent disregard of
> this Court's authority and his admissions that he

> ha[d] dissipated the proceeds of the Barbara Street
> property sale and sold other assets between January 1,
> 2013 and the present, constitute[d] clear and
> convincing evidence that defendant Pappas ha[d] acted
> in contempt of this Court's orders.

[Doc. #255].

On February 29, 2016, the Court issued a capias for Mr. Pappas's arrest and scheduled his presentment for March 9, 2016. [Doc. #257]. A federal public defender was appointed on March 9, 2016, to represent defendant with respect to the capias proceeding. Pappas turned himself in to the United States Marshals Service in Worcester, Massachusetts. During a conference call with counsel, the Court instructed defendant to file an updated disclosure of assets and a response to the recommended ruling and asked counsel to confer to set a date with the Court for the contempt proceeding. [Doc. #259]. On May 24, 2016, Pappas filed an objection to the Court's recommended ruling.[1] [Doc. #264].

In his objection, defendant contended that since the issuance of the capias he had "substantially complied with paragraphs 2 through 4 of the January 19, 2016 Order, eliminating the need for coercive civil contempt measures with respect to these portions of the order." [Doc. #264 at 3]. He

---

[1] Plaintiff filed a response on June 3, 2016. [Doc. #268]. The objection to the recommended ruling is pending with Judge Eginton.

was trying to sell Normandies Park and a property referred to as Putnam Pike to satisfy the judgment. In addition, he paid plaintiff $42 on May 24, 2016, representing the previous month's rental income from Normandies Park. [Doc. #264 Ex. 5]. He agreed to accept service of process at an address in Golden Valley, Arizona. He stated, however, that he was "simply not able to comply with that order" directing him to pay plaintiff the sum of $47,844.28. In a footnote he stated it was "worth noting that a substantial portion of the $47,844.28-a figure reflecting the proceeds of a sale of property by Mr. Pappas on December 7, 2011-appears to have been used to satisfy Mr. Pappas' tax liabilities with respect to the Normandies Park property." Id. n.1.

In reply, plaintiff pointed out that there is a history of Pappas making misrepresentations to the Court concerning the Barbara Street property and failing to disclose assets and financial resources. [Doc. #268 (citing Doc. #238 (setting forth factual background)). For example, in sworn responses to plaintiff's interrogatories dated February 17, 2012, Pappas stated he obtained "a loan of $35,000 from Patricia Hogan [] to pay the tax liens in regard to Normandies Park. There is no loan document for this loan."[2] [Doc. #268 at 2 (citing Ex. A).

---

[2] Patricia Hogan is Charles Pappas's sister.

4

Similarly, plaintiff stated that "Pappas continue[d] to fail to account for valuable property such as a snow mobile and construction equipment that his co-defendant Robin Delaney testified he was concealing." [Doc. 268 (citing Ex. B at 98:4-102:8)]. In sum, plaintiff argued that "[g]iven Mr. Pappas's flagrant violation of this Court's non-dissipation order and general pattern of lack of candor under oath and before this Court, the Court is not required to credit his claims that he lacks the financial resources to comply with the Order." Id. at 4.

Renewed Motion for Sanctions and Finding of Contempt [Doc. #274]

On October 7, 2016, plaintiff filed a Renewed Motion for Sanctions and Finding of Contempt due to Pappas's continued evasion of obligations and defiance of the Court orders. [Doc. #274]. She again asserts that Pappas refused to comply with the Court's January 19, 2016, Order to turn over profits generated by defendant Normandies Park, LLC. [Doc. #274 ¶2]. Plaintiff seeks a finding of contempt and imposition of sanctions, up to and including confinement until he purges his contempt. Since the filing of the motion, the parties have engaged in protracted discussions. The Court scheduled contempt hearings on December 19, 2016; January 19, February 21, April 17, May 9, and June 12, 2017, which were postponed at the parties' request on the

representation that they were trying to resolve the contempt.[3]
[Doc. #282, 287, 290, 292, 295, 296].

Defendant first contends that he has provided accountings
of income and expenses for Normandies Park in compliance with
the January 19, 2016 Order. [Doc. #277 at 1]. Beginning on
August 26, 2016, Pappas filed Statements of Normandies Park
Income and Expenses pursuant to the Court's Order dated January
19, 2016.  [Doc. ##270, 271, 276, 288, 289, 291, 294, 297, 309].
In each statement, defendant submitted that the expenses either
met or exceeded the rental income at the mobile park. Second, he
has responded to all interrogatories and requests for
production. Id. Third, he points out that all his remaining
property is for sale and all the proceeds will be "provided
entirely" to plaintiff. Instead, of a contempt finding, he asks
the Court to "establish a payment schedule that takes into
account [his] limited assets and monthly income." Id. He
represented he received a minimal income from rental properties
and has "supplemented his income by renting out his residence on
an occasional basis" and by "perform[ing] odd jobs like working
as a handyman, cutting and packing wood, and giving advice to
builders." Id. 2-3.  "As a bottom line, Mr. Pappas lives close
to rock bottom, sometimes relying on meals from a food pantry to

---

[3] A telephone conference was held on November 14, 2016, to
schedule the contempt hearing. [Doc. #280].

eat." Id. at 3.

Pappas proposed the following payment schedule: "10% of all of his income above the federal poverty line ($11,770 per year) and 25% of all of his income above 150% of the federal poverty line ($17,655 per year)." Id. at 5. He proposed submitting a monthly payment, along with an accounting of his income for the month. Id.

STANDARD

"This Court has the inherent power to hold a party in civil contempt in order 'to enforce compliance with an order of the court or to compensate for losses or damages.'" Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981) (quoting McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949)).

A party may be found in civil contempt for failure to comply with a court order if (1) the order is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner. Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004). A willful violation need not be proved. Donovan v. Sovereign Sec. Ltd., 726 F. 2d 55, 59 (2d Cir. 1984). The standard for contempt is "rigorous" and requires that the party seeking contempt prove its elements "by clear and convincing evidence." Schmitz v. St. Regis Paper Co.,

7

758 F. Supp. 922, 925 (S.D.N.Y. 1991).  "In the context of civil
contempt, the clear and convincing standard requires a quantum
of proof adequate to demonstrate 'reasonable certainty' that a
violation occurred." Levin v. Tiber Holding Corp., 277 F.3d 243,
250 (2d Cir. 2002) (citation omitted).

A court enjoys broad discretion in determining the
appropriate sanction, and should consider the harm and probable
effect of alternative sanctions.  Paramedics Eltromedicina
Comercial, Ltda, 369 F.3d at 657; EEOC v. Local 29, Sheet Metal
Workers, 247 F.3d 333, 336 (2d Cir. 2001).  The Court may resort
to incarceration as a coercive sanction for civil contempt,
providing that "the contemnor is able to purge the contempt and
obtain his release by committing an affirmative act."  Int'l
Union Mine Worker of Am. v. Bagwell, 512 U.S. 821, 828-29
(1994).

Impossibility Defense

The purpose of civil contempt, broadly stated, is to
compel a reluctant party to do what a court requires
of him. Because compliance with a court's directive is
the goal, an order of civil contempt is appropriate
"only when it appears that obedience is within the
power of the party being coerced by the order."

Badgley v. Santacroce, 800 F.2d 33, 36 (2d Cir. 1986) (quoting
Maggio v. Zeitz, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed.
476 (1948)). Parties are bound by a court order until the court
modifies the order or releases them from it, and defendants who

8

act without first asking the court to clarify the order "act [ ] at their own peril." McComb, 336 U.S. at 192. A party may defend against a contempt by showing that his compliance is "factually impossible." United States v. Rylander, 460 U.S. 752, 757, 103 S. Ct. 1548, 1552, 75 L. Ed.2d 521 (1983). "An impossibility defense will not lie where the defendant cannot demonstrate that it has made diligent efforts to comply with the order, and no circumstances have changed." E.E.O.C. v. Local 638-Local 28 of Sheet Metal Workers' Int'l Ass'n, 13 F. Supp. 2d 453, 459 (S.D.N.Y. 1998), aff'd in part, rev'd in part and remanded sub nom., City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n, 170 F.3d 279 (2d Cir. 1999).

To the extent that defendant Pappas is raising this defense, he has the burden of production that may be difficult for him to meet in light of his history of noncompliance with Court orders and his response to this motion. At the hearing on August 29, 2017, defendant offered no testimony or evidence to support a finding that he "made diligent efforts" to comply with the January 1, 2016 Order or that "circumstances have changed," making compliance with the order impossible. Id.

August 29, 2017 Hearing

At a hearing on August 29, 2017, Pappas appeared in good

health, able bodied and well-nourished.[4] He is currently living in Maine with a girlfriend, Julie Weber, and her two daughters.

Income

Pappas testified that he generates income from self-employment such as selling bulk wood, construction and Radon testing and he occasionally assists Ms. Weber with handyman projects and delivery of wood. [Pl. Ex. 7 at 3 (income sources listed were handyman, cutting and packaging firewood, planning residential house construction, rental income); Pl. Ex. 32]. A previously undisclosed checking account statement from December 2015 through November 2016, showed consistent deposits and bill payments. [Pl. Ex. 7 ("Mr. Pappas has not opened or maintained any bank account, directly or indirectly, since August of 2012."); 11]. The banking statement showed consistent electronic payments for expenses such as gasoline, Time Warner Cable, utilities, credit cards, Home Depot, Wal-Mart, Amazon, food, internet service, smoke shop, etc. [Pl. Ex. 11], during a time period when defendant asserted an inability to pay plaintiff. His counsel represented that he was "involved in a repair/construction job" between August 30 and September 22, 2016, which accounted for several significant withdrawals and deposits. [Doc. #11 at 1]. Plaintiff did not provide a bank

---

[4] Defendant appeared with counsel and testified under oath.

statement for 2017, which violates the January 19, 2016 Order at paragraph 3. There is no evidence that Pappas has a physical or mental disability that prevents him from working. Rather, defendant has demonstrated an ability to generate consistent income and pay expenses.

<u>Proceeds from Barbara Street Sale</u>

Plaintiff remains in contempt of Judge Eginton's January 19, 2016 Order for the reasons stated in the Court's Recommended Ruling dated February 26, 2016, and based on the current record.

Responses to questions regarding the proceeds from the Barbara Street property were evasive, including whether or not a portion (approximately $31,000) was used to pay taxes on Normandie Park or whether his sister, Patricia Hogan, lent him money for that tax payment. Under questioning by plaintiff's counsel, he could "not recall" or was "not sure" about the sale of this or other properties or payment of taxes, or the accuracy of his sworn interrogatory responses. This testimony is of no matter to the determination of whether plaintiff remains in contempt. Plaintiff has not paid the plaintiff the amount of $47,844.28 representing the proceeds from the sale of the Barbara Street property and remains in contempt of the January 19, 2016 Order at paragraph 1.

<u>Farms Hill Trust</u>

Plaintiff offered conflicting testimony regarding his role

as a guarantor for a property purchased by the Farms Hill Trust
for the benefit of Ms. Weber, Trustee. Pappas maintains he has
no beneficial interest in the Trust, is not privy to how the
property is rented or managed, has no knowledge of the Trust
holdings, and had no access to the Trust documents. He testified
that he did not provide a financial statement to the seller at
the time of purchase, despite his designation as guarantor.

Roxbury Road Trust

Similarly, plaintiff offered conflicting testimony
regarding the Roxbury Road Trust. The Trust maintains the same
P.O. Box address in Maine as defendant. He testified that his
former girlfriend Laurie Farrington was a Trustee. [Pl. Ex. 23].
At the time she was Trustee, the mailing address for the Trust
was the same as the residence shared by Farrington and Pappas.
Ms. Farrington resigned as Trustee on November 16, 2012 and
Patricia Hogan, Pappas's sister, was appointed as Successor
Trustee. Id. Pappas witnessed the Trustee Resignation document.
Id. Pappas testified that Julie Weber did not want his former
girlfriend acting as Trustee, that the Roxbury Road Trust is Ms.
Weber's Trust and that he had no knowledge of various
transactions that may have been made by the Trust, including the
sale of a property located on Roxbury Road.

Proposed Payment Plan

Defendant Pappas proposes a monthly payment plan,

12

accompanied by an accounting of his income, to satisfy the
judgment.[5] He further proposes that "[t]he effect of the judgment
on sale of any valuable assets owned by Mr. Pappas, including
any assets acquired in the future, would not be subject to this
schedule." [Doc. #277 at 5].

   Plaintiff expresses understandable concern that defendant
will not comply with a Court order to pay a percentage of
unsubstantiated income. As plaintiff pointed out, Pappas's bank
accounts showed a substantial pass through of money, although by
the time the account balances were disclosed there was no
remaining balance. [Pl. Ex. 11]. Defendant has demonstrated
through his actions and deeds that his word is not trustworthy
even when provided under oath.

   There is no question that Mr. Pappas continues to violate
the Court's January 19, 2016 Order. Since the Court entered the
Order to tender the Barbara Street sale proceeds in the amount

---

[5] Defendant proposes that the Court set the following payment
schedule,
     10% of all of his income above the federal poverty
     line ($11,770 per year) and 25% of all of his income
     above 150% of the federal poverty line ($17,655 per
     year). Defendant would provide such payment on a
     monthly basis, along with an accounting of his income
     for the month. The effect of the judgment on sale of
     any valuable assets owned by Mr. Pappas, including any
     assets acquired in the future, would not be subject to
     this schedule.

[Doc. #277 at 5].

of $47,844.28, Pappas has not made any payments to plaintiff or demonstrated any effort to comply with the Court's order.[6] Pappas testified that he has no records of employment or income, he is paid in cash, files no federal or state income tax returns and does not pay any state property taxes. Further, all the statements generated by defendant for Normandie Park show that expenses meet or exceed income. These statements were prepared by defendant and are not verified with copies of rental checks and/or proof of payment of expenses.

Defendant has constructed a lifestyle in which he shows no income, property or assets. Plaintiff has uncovered a troubling record of Pappas's close associations with Trusts in which his girlfriends or, temporarily, his sister, nominally act as Trustee. Defendant has demonstrated that he is not incentivized to show income. He testified to generating undisclosed, unverifiable, income from wood sales, a Radon company, construction, rental income and handyman type work without explaining how he houses, clothes, feeds and supports himself. "A contemnor may be excused from the burden of a civil contempt sanction if [he] lacks the financial capacity to comply; but the

---

[6] As previously noted, Pappas paid plaintiff $42 on May 24, 2016, representing the previous month's rental income from Normandies Park. [Doc. #264 Ex. 5]. The same day that Pappas filed an objection to the Court's recommended ruling.[6] [Doc. #264]. That is the only payment since the entry of Judge Eginton's January 19, 2016 Order.

14

contemnor bears the burden of production in raising such a defense." Paramedics Electromedicina Comercial, Ltda, 369 F.3d at 658. Defendant has not sustained his burden here.

ORDER

In light of the foregoing, it is HEREBY ORDERED that,

Defendant Charles Pappas will pay $800 per month, no later than the 10th of each month, to Attorney Greg Kirschner, Trustee for Ms. Parris. Defendant will file with the Court under seal a proof of payment together with a sworn and notarized monthly statement of income and expenses, along with a copy of his monthly bank statement. This submission will be provided by the 15th of each month with a copy to plaintiff's counsel. Should plaintiff begin to receive rental income from Normandies Park, defendant may offset the $800 monthly payment to reflect any amount tendered from the Normandies Park stream of income.

Compliance with this order will continue until such time as the judgment is satisfied in full. Failure to comply will subject the defendant to further sanctions, which may include incarceration.

CONCLUSION

Accordingly, plaintiff's Renewed Motion for Sanctions and Finding of Contempt **[Doc. #274]** is **GRANTED** in accordance with this ruling and order.

This is a Recommended Ruling. See Fed. R. Civ. P.

15

72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with order.  See Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen days may preclude appellate review.  See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ. R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at Bridgeport this 5th day of October 2017.

_____/s/_____

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE